## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DERRICK HOLT**                                    **CIVIL ACTION**

**VERSUS**                                          **NO.  12-2241**

**BURL CAIN, WARDEN**                               **SECTION "B"(2)**


## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.  STATE COURT PROCEDURAL BACKGROUND

The petitioner, Derrick Holt, is currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Holt was indicted by a grand jury in Jefferson Parish on November 6, 2003, on two counts of first degree murder of Narcissa Laymon and L.C. Lewis.[3]  He entered a plea of not guilty on November 7, 2003.[4]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Detective Nick Vega ("Detective Vega") with the Jefferson Parish Sheriff's Office testified that, on September 6, 2003, at approximately 8:00 p.m., he assisted in responding to 911 hang up calls at 2037 Tuskegee Drive, in Marrero, Louisiana. Upon arrival, he saw a naked female, later identified as Narcissa Laymon ("Laymon"), lying face down half in the doorway. The door was ajar with the woman butted against it.  As he approached the woman, he saw blood inside the doorway and into the living room. He called for medical assistance after he observed that the woman was struggling to breathe and had stab wound injuries to her back with blood seeping out.
>
> Detective Vega also noticed another victim, a male later identified as L.C. Lewis ("Lewis"), who was located at the house next door, on the sidewalk by the driveway. The victim's eyes were open; however, he was unresponsive. Detective Vega observed a "slit" in the male victim's chest. Later in his investigation, Detective Vega interviewed the next-door neighbor who called the police, and then he searched the area for the suspect.
>
> Ronald Jacks ("Jacks") testified that, on the date of the incident, he drove to his mother's home, which is next door to the crime scene. A neighbor of his mother's, whom he identified as Holt, approached him and calmly asked for a big screwdriver because he had locked the children in the house.  Jacks had seen Holt taking the children, who lived at 2037 Tuskegee, to school several times over a three-month period. Jacks offered Holt a small screwdriver and also offered to help him get into the house, but Holt declined.  Jacks testified that he left Holt by the front window at 2037 Tuskegee.  According to Jacks, a few minutes later his sister informed him that Holt dove through the window. Jacks testified that he

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Indictment, 11/6/03; Grand Jury Return, 10/16/03.

[4]St. Rec. Vol. 1 of 7, Minute Entry, 11/7/03.

called 911, and informed the police that he had given Holt a screwdriver.  When he walked outside, he saw people standing in front of Laymon's door. . . .

Cindy Jacks, Jacks's sister, testified that, on the night of the incident, she saw a man walk across her mother's yard, and then turn back around.  According to Cindy Jacks, the man got the screwdriver after talking to her brother, Jacks.  Then, the man returned to the house he shared with his girlfriend, who was killed that evening. . . .

*   *   *   *   *

Dwanne Wiltz ("Wiltz") testified that she was a co-worker and best friend of Laymon[.]  She had met Holt, whom she identified in court, through Laymon at their jobsite.  Wiltz testified that Laymon and Holt were dating, but not living together.  Wiltz testified that, the morning after Laymon's murder, and after she learned of the murder, Holt called her a few times.  According to Wiltz, during the first telephone call at her jobsite, Holt identified himself and Wiltz also recognized his voice. Wiltz testified that Holt asked her if [s]he had talked to Laymon, then told her, "[You] needed to call her because she was hurt real bad and that he had hurt her, that I needed to call and check on her." Wiltz testified that she directed her co-workers to call 911, and kept Holt on the telephone as long as she could, in order for the police to catch him.  According to Wiltz, in the first telephone call, Holt continued to repeat that he hurt Laymon and that Wiltz should call her. Holt did not describe the details at that time.

Wiltz testified that Holt called her a second time on her cell phone. . . . According to Wiltz, she knew that Holt was trying to flee and needed money because he asked her for $68 to catch a bus to Atlanta. Under the impression that Lewis was the father of Wiltz's children, Holt told Wiltz that "they [Lewis and Laymon] must have been meeting." Wiltz testified that Lovell Lewis worked with her and Laymon, and when asked if Laymon and Lovell Lewis had started a relationship prior to the incident, Wiltz responded, "Yeah, I believe so." During their second conversation, Holt repeatedly told her, that "they were making fools of me and him and, you know [Holt] had been watching them for a while and they, I guess they deserved what [sic] they were, you know, going to get or whatever because they just kept messing, making fools of us." Holt also told Wiltz that he and Laymon had an argument earlier on the day of the incident.

Holt said that when he broke into the house Laymon, Lewis and Lewis' brother, Lovell Lewis, were present. According to Wiltz, Holt told her that he went into the house through the window and hurt them, after he saw them holding hands and going toward the bedroom. Holt told her that he thought they were going to have sex and that he stabbed them. On a third call, Holt stated that he was trying to come to Wiltz's house to hide out. According to Wiltz, during their telephone calls, Holt never expressed any remorse for his actions. She subsequently identified Holt in a photographic line-up.

Sergeant Klein of the Jefferson Parish Sheriff's Office testified that he participated in the investigation. According to Sergeant Klein, after interviewing

3

the witnesses and using some postcards found in the home written to one of the victims, a photographic lineup was developed that included a photograph of Holt. After Holt was identified in the photographic lineup by Lovell Lewis, Jacks, and Cindy Jacks, an arrest warrant was prepared.

*   *   *   *   *

According to his investigation, there were four people present during the murders: the victims, Lovell Lewis, and Holt.  Sergeant Klein admitted that, during his statement, Holt said he was upset and in shock.  Holt told him that "if he 'knowed [sic] what the situation would have occurred [he] wouldn't have went [sic] into that house."  Sergeant Klein acknowledged that photographs of Holt's arms and hands showed cuts or lacerations and admitted that Holt told him that the cuts on his fingers occurred when he grabbed the blade of the knife.  Sergeant Klein also conceded that some of the wounds on Holt's arms appeared to be relatively fresh.

Holt's statement was admitted into the record.  In it Holt explained why he was also known as Derrick McThiney.  Holt and Laymon had argued earlier in the day.  When Holt returned to the house, his key did not work so he asked the neighbor for a screwdriver; while trying to take out the window pane, the glass broke.  Holt let himself in and saw "Narcissa [Laymon]" in her robe and the guy with her said he was going to "go get my heat for this n___."  Holt was shocked but not angry.  Holt stated that the male victim reached for a knife, but Holt grabbed it first, cutting himself.  He feared for his life.  Holt stabbed the victim in the chest, but as the victim staggered toward the garage, Holt stabbed him in the back, leaving the knife in the victim.  Laymon picked up a knife, and Holt wrest[l]ed it from her and she fell.  He stabbed her as she reached for something. She was on the floor at the time.  He stabbed her again, in the back, as she went to the kitchen, because he thought she was going to get another knife.  Laymon ran to the front door.  Holt left out the front door.  She was alive when he left. Holt got some other clothes to replace the bloodstained ones, which he threw away.  He called a friend the next day to see if anyone had heard from her.  He did not plan the murders.

Michael Rodrigue ("Rodrigue"), a convicted felon, testified that he met Holt while incarcerated in Angola because of Hurricane Katrina.  Rodrigue testified that he asked Holt why he was in jail, and Holt told him that he killed two people, on Tuskegee Drive.  Holt described how he committed the murders with two knives. . . .

Rodrigue testified that Holt told him that Laymon and a man, presumably Lewis, were naked in bed together having sex.  As Holt got to the door, Lewis got up.  According to Rodrigue, Holt told him that he let Lewis get dressed, and then Lewis started walking down the hall.  As soon as Lewis put his hand on the door of the garage, Holt began stabbing him in his back with a knife.  Lewis and Holt began wrestling for the knife.  Rodrigue testified that Holt described the floor as having "so much blood" that Lewis slipped in his own blood and fell. After Lewis

4

fell, Holt got on top of him and started stabbing him. Laymon grabbed Holt in order to stop him. In response, Holt stabbed Lewis harder one time in his back with the knife, leaving one of the knives in Lewis' back. . . .

Then, Holt just turned around and started stabbing Laymon in her back and shoulder with the knife. Rodrigue testified that Holt told him that Laymon tried to get away through the front door. However, something placed behind the door prevented her from escaping Holt in time and, therefore, "[Holt] did her at the door." According to Rodrigue, Holt told him that at one point, he stabbed Laymon to her bone causing the knife to pop right out of his hand and allowing Laymon to get out the door. Her body fell in the front yard. According to Rodrigue, Holt stated that "[w]hat he really was going to do was hold [Laymon] down, after he stabbed her, hold her down and just like smother her, let her die.". . .

According to Rodrigue, Holt showed no remorse for the murders. According to Rodrigue, Holt told him that he was going to get away with the murders by seeing a psychiatrist and playing crazy.

Dr. Karen Ross, a forensic pathologist with the Jefferson Parish Coroner's Office, testified that she did autopsies on Laymon and Lewis. Dr. Ross' external examination of Laymon revealed multiple sharp force entry wounds to the front and back of the body, and Laymon's wounds were consistent with the use of a knife. The wound into Laymon's heart was "a very severe potentially lethal wound." Another one of the multiple wounds, made while the victim was still alive, was on the lower side of Laymon's left back, went through her stomach and liver into the diaphragm and left chest cavity. Dr. Ross testified that one of the major mechanisms of Laymon's death was hemorrhage. In addition to the multiple stab wounds, Dr. Ross observed wounds to Laymon's chin and head, as well as defensive wounds to her left hand and index finger. Dr. Ross testified that Laymon's death was a homicide.

Dr. Ross testified that her external examination of Lewis revealed multiple sharp force entry wounds to the front and back of the body. One of those wounds made vertically on the right side of Lewis' chest extended through the right lung downward into the inferior vena cave, a major blood vessel in the body. Dr. Ross described this wound as being lethal within minutes. Dr. Ross agreed all but one of the multiple stab wounds appeared to have been made with a knife. According to Dr. Ross, the remaining stab wound appeared to have been made with a flathead screwdriver. Dr. Ross also observed injuries to Lewis' scalp, which included a fractured skull caused by the entry of a knife. According to Dr. Ross, Lewis also had wounds on his right ear and defensive wounds to his right hand and the back of his left middle finger. Dr. Ross testified that Lewis' death was also a homicide.

5

<u>State v. Holt</u>, 12 So.3d 502, 504-08 (La. App. 5th Cir. 2009); State Record Volume 2 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 08-KA-1276, pages 3-11, May 26, 2009.

Holt's counsel requested an examination to determine Holt's competence to proceed and assist with his defense, including an evaluation for mental retardation.[5]  At a hearing on February 11, 2004, the state trial court found Holt <u>not</u> competent based on the stipulated reports of the sanity commission doctors.[6]  The court ordered further evaluation concerning Holt's mental retardation.

At a subsequent hearing on May 12, 2004, the court again found Holt <u>not</u> competent and ordered him placed in the East Louisiana Mental Health Facility in Jackson, Louisiana.[7]  The court also found Holt presumptively retarded.[8]

More than two years later, following treatment upon receiving additional reports, the court determined on December 13, 2006, that Holt was competent to proceed. The court also found that Holt was mildly mentally retarded, which was sufficient to hold that

---

[5]St. Rec. Vol. 1 of 7, Motion to Permit Defense Psychiatrist to Examine Defendant, 9/17/03; Trial Court Order, 9/17/03; Motion to Appoint a Sanity Commission, 12/15/03; Trial Court Order, 1/5/04; Motion for Extension of Time, 12/15/03; Minute Entry, 2/11/04.

[6]St. Rec. Vol. 1 of 7, Minute Entry, 2/11/04; St. Rec. Vol. 3 of 7, Sanity Hearing Transcript, 2/11/04.

[7]St. Rec. Vol. 1 of 7, Minute Entry, 5/12/04; St. Rec. Vol. 4 of 7, Sanity Hearing Transcript, 5/12/04.

[8]<u>Id</u>.; St. Rec. Vol. 1 of 7, Minute Entry, 8/16/06.

Holt was not eligible for the death penalty.[9]  The State thereafter amended the indictment to charge Holt with two counts of second degree murder.[10]  The state trial court later denied Holt's pretrial motions, including motions to suppress his confession, other evidence and his identification.[11]

Holt was tried before a jury on April 29 - 30 and May 1, 2008, and was found guilty as charged.[12]  At a hearing on June 16, 2008, the state trial court denied Holt's motion for a new trial.[13]  After waiver of legal delays, the court sentenced Holt to two life terms in prison at hard labor without benefit of parole, probation or suspension of sentence.[14]  Counsel's motion to reconsider the sentences was denied.[15]

---

[9]St. Rec. Vol. 1 of 7, Minute Entry, 12/13/06; St. Rec. Vol. 4 of 7, Sanity Hearing Transcript, 12/13/06.

[10]St. Rec. Vol. 1 of 7, Minute Entry, 2/28/07; Indictment (handwritten amendment), 2/28/07.

[11]St. Rec. Vol. 1 of 7, Minute Entry, 5/11/07 (motion to suppress confession); Hearing Minutes, 5/30/07 (discovery, motion to suppress evidence as to clothing, shoes, and keys); Motion to Quash Indictment as Constitutionally Deficient, 7/24/07; Motion for Daubert Hearing Regarding Fingerprint Analysis, 8/3/07; Motion for Daubert Hearing Regarding DNA, 8/3/07; Minute Entry, 8/6/07; Motion to Declare Article 782(A) Unconstitutional, 4/3/08; Minute Entry, 4/4/08; Minute Entry, 4/14/08; Trial Minutes, 4/29/08; St. Rec. Vol. 4 of 7, Motion Hearing Transcript, 5/11/07; Motion Hearing Transcript, 5/30/07; Motion Hearing Transcript, 8/6/07; Hearing Transcript, 4/4/08; St. Rec. Vol. 5 of 7, Hearing Transcript, 4/14/08; St. Rec. Vol. 5 of 7, Trial Transcript, 4/29/08.

[12]St. Rec. Vol. 1 of 7, Trial Minutes, 4/29/08; Trial Minutes, 4/30/08; Trial Minutes, 5/1/08; Jury Verdict Form, 5/1/08; St. Rec. Vol. 5 of 7, Trial Transcript, 4/29/08; Trial Transcript, 4/30/08; St. Rec. Vol. 6 of 7, Trial Transcript (continued), 4/30/08; Trial Transcript, 5/1/08.

[13]St. Rec. Vol. 1 of 7, Sentencing Minutes, 6/16/08; Motion for New Trial, 6/13/08; Trial Court Order, 6/16/08; St. Rec. Vol. 6 of 7, Sentencing Transcript, pp. 9-10, 6/16/08.

[14]Id.; St. Rec. Vol. 6 of 7, Sentencing Transcript, pp. 11-12, 6/16/08.

[15]Id.; Motion for Reconsideration of Sentence, 6/16/08; Trial Court Order, 6/16/08; St. Rec. Vol. 6 of 7, Sentencing Transcript, pp. 12-13, 6/16/08.

On direct appeal to the Louisiana Fifth Circuit, Holt's appointed counsel asserted three errors:[16] (1) The trial court erred in failing to give requested jury charges on self-defense. (2) The trial court erred in giving the jury an improper instruction on reasonable doubt. (3) The erroneous jury instructions were not harmless error.  Holt filed pro se a supplemental brief alleging that his trial counsel provided ineffective assistance when he failed to plead Holt not guilty and not guilty by reason of insanity.[17]  Holt also included a pleading entitled "Oral Argument Review" in which he stated his concerns about the sufficiency of the evidence to support justifiable homicide, the sufficiency of the police investigation and the admissibility of the recording of Lovell Lewis's 911 call.

On May 26, 2009, the Louisiana Fifth Circuit affirmed the conviction and sentence, finding no merit in the claims raised.[18]  The court held that the trial evidence did not support the giving of a self-defense charge and that the reasonable doubt jury instruction was not erroneous, leaving no need to consider the third issue of harmless error.  As for Holt's pro se brief, the court instructed that the ineffective assistance of counsel claim be further developed and addressed on post-conviction review.  The court also indicated that it would not consider the matters addressed in Holt's later filed "Oral

---

[16]St. Rec. Vol. 6 of 7, Appeal Brief, 08-KA-1276, 1/21/09.

[17]St. Rec. Vol. 6 of 7, Supplemental Appeal Brief, 08-KA-1276, 3/26/09; Motion for Leave, 08-KA-1276, 2/3/09; 5th Cir. Order, 08-KA-1276, 3/4/09.

[18]State v. Holt, 12 So.3d at 511; St. Rec. Vol. 2 of 7, 5th Cir. Opinion, 08-KA-1169, pp. 15-16, 5/26/09.

Argument Review" because the pleading was not a brief and the matters it contained were not raised as assignments of error.  Nevertheless, the court found that it had already addressed the justifiable homicide defense. The court also resolved that any discrepancies in the police testimony and the investigation were matters of credibility for the jury to decide and not to be re-weighed on appeal.  As for the admissibility of the 911 tape, the court deemed the issue waived for lack of a contemporaneous objection as required by La. Code Crim. P. art. 841(A).

Holt timely sought rehearing in the Louisiana Fifth Circuit on June 9, 2009.[19]  The court refused rehearing on July 6, 2009.[20]

The Louisiana Supreme Court denied Holt's timely[21] writ application without stated reasons on March 26, 2010.[22]  Holt's conviction became final 90 days later, on June 24, 2010, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari

---

[19]St. Rec. Vol. 6 of 7, Motion for Rehearing, 08-KA-1276, 6/17/09 (postmarked 6/9/09); La. Unif. App. R. 2-18.2.

[20]St. Rec. Vol. 6 of 7, 5th Cir. Letter, 08-KA-1276, 7/6/09.

[21]La. S. Ct. Rule X§5(a) provides that the writ application be mailed or filed within 30 days of the denial of a properly filed request for rehearing under La. App. R. 2-18.7.  His petition was dated July 12, 2009, which was only six (6) days after the rehearing was refused.

[22]State ex rel. Holt v. State, 29 So.3d 1249 (La. 2010); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2009-KO-1681, 3/26/10; La. S. Ct. Writ Application, 09-KH-1681, 7/22/09 (postmarked 7/14/09, dated 7/12/09); St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2009-KO-1781, 7/22/09 (showing postmark on 7/14/09).

with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

More than eight months later, on March 16, 2011, Holt submitted an application for post-conviction relief to the state trial court asserting three grounds for relief:[23] (1) He received ineffective assistance of counsel when (a) his trial counsel failed to raise the issue of his insanity at the time of the offense, failed to seek funds to hire a forensic expert and DNA expert and failed to subpoena the person who collected the blood and forensic evidence; and (b) his appellate counsel failed to argue that the state trial court abused its discretion in failing to give a jury instruction on the responsive verdict of negligent homicide and failed to challenge the inadmissibility of Lovell Lewis's 911 tape under the Sixth Amendment right to confront and cross-examination his accusers. (2) The state trial court erred in failing to give a jury instruction on the responsive verdict of negligent homicide. (3) The state trial court erred in admitting testimony regarding the hearsay tape of Lovell Lewis's 911 call.

After receipt of the State's opposition, the state trial court denied the application on June 13, 2011.[24] The court addressed Holt's first claim, ineffective assistance of trial and appellate counsel finding that the claim was without merit under the standards of Strickland v. Washington, 466 U.S. 668 (1984), and related state law. It found Holt's

---

[23]St. Rec. Vol. 2 of 7, Uniform Application for Post-Conviction Relief, 4/21/11 (dated 3/16/11).

[24]St. Rec. Vol. 2 of 7, Trial Court Order, 6/3/11; State's Response, 5/15/11.

other claims procedurally barred from review pursuant to La. Code Crim. P. art. 930.4(C), because one could have been and was not raised on appeal, and the other because it was fully litigated on direct appeal.

On July 7, 2011, Holt submitted a timely writ application seeking review of that ruling in the Louisiana Fifth Circuit.[25]  The court denied the application on July 26, 2011, because Holt failed to attach copies of the relevant state court pleadings and ruling.[26]  The court refused to consider Holt's request for rehearing citing La. App. R. 2-18.7 and 4.9, which do not provide for rehearing after denial of a this type of writ application.[27]

On August 26, 2011, Holt submitted an untimely[28] writ application to the Louisiana Supreme Court seeking review of the appellate court's July 26, 2011 ruling.[29]  While that application was outstanding, Holt submitted to the Louisiana Fifth Circuit another writ application which the court construed to be a second request for rehearing

---

[25]St. Rec. Vol. 7 of 7, 5th Cir. Writ Application, 11-KH-691, 7/12/11 (postmarked 7/8/11, dated 7/7/11); Notice of Intent, 7/12/11; Trial Court Order, 7/20/11 (leave granted to 8/26/11).

[26]St. Rec. Vol. 2 of 7, 5th Cir. Order, 11-KH-691, 7/26/11.

[27]St. Rec. Vol. 7 of 7, 5th Cir. Order, 11-KH-691, 9/6/11; 5th Cir. Letter, 11-KH-691, 9/6/11.

[28]Under La. S. Ct. R. X§5 a writ application must be mailed or filed within 30 days of the appellate court's ruling, and a petition for rehearing that is not allowed does not alter that date.  Thus, Holt had until August 25, 2011 to submit his writ application, since he had no right to request rehearing. He did not sign and date the writ application until August 26, 2011, one day late.

[29]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 11-KH-1902, 8/31/11 (postmarked 8/29/11, dated 8/26/11); St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2011-KH-1902, 8/31/11 (postmark 8/29/11).

of its July 26, 2011 ruling.[30]  The court refused to consider the improper and repetitive

request on December 28, 2011.[31]  Thereafter, on May 4, 2012, the Louisiana Supreme

Court denied Holt's pending writ application without stated reasons.[32]

II.     FEDERAL HABEAS PETITION

More than four (4) months later, on September 14, 2012, the clerk of this court

filed Holt's petition for federal habeas corpus relief in which he asserted six grounds for

relief:[33] (1) The state trial court erred in failing to give a requested jury instruction on

self-defense. (2) The state trial court erred in giving an improper reasonable doubt jury

instruction. (3) The erroneous instructions were not harmless error. (4) The state trial

court erred in allowing inadmissible hearsay testimony on the 911 calls. (5) He was

denied effective assistance of counsel when (a) his trial counsel failed to pursue a sanity

defense, failed to subpoena the person responsible for the blood and forensic evidence

and failed to secure funds for a forensic expert to support the self-defense theory; and

(b) his appellate counsel failed to raise the issue of the trial court's failure to give a

---

[30]The State failed to provide a copy of this rehearing request/writ application.  The filing date appears on the face of the court's related order.  St. Rec. Vol. 7 of 7, 5th Cir. Order, 11-KH-871, 12/28/11.

[31]St. Rec. Vol. 7 of 7, 5th Cir. Order, 11-KH-871, 12/28/11.

[32]State ex rel. Holt v. State, 88 So.2d 453 (La. 2012); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2011-KH-1902, 5/4/12.

[33]Rec. Doc. No. 1, pp. 5, 7, 8, 10, 26-28, 30, 34, 35, 37, 39, 41-43.

negligent homicide jury instruction. (6) The state trial court erred in failing to give a jury instruction on the responsive verdict of negligent homicide.

The State filed a response in opposition to Holt's petition in which it concedes exhaustion, but argues that the petition was <u>not</u> timely filed and each of the claims is in procedural default and barred from federal review.[34]

In his reply to the State's limitations defense, Holt suggests that the State failed to afford him statutory tolling from the date he received the Louisiana Supreme Court's May 4, 2012 order rather than from its issuance.[35]  He also suggests that the Louisiana Fifth Circuit ruled too quickly on his 2011 writ application, and he should be given additional time for that reason.

In response, the State argues that Holt is not entitled to additional statutory tolling and that he has failed to exhibit any rare or exceptional circumstance that would warrant equitable tolling.[36]

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[34]Rec. Doc. No. 9.  The State also reserved its right to address the merits.

[35]Rec. Doc. No. 10.

[36]Rec. Doc. No. 13.

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[37] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Holt's petition which, for reasons discussed below, is deemed filed in this federal court on August 16, 2012.[38]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Holt's petition is not timely filed, but concedes that the claims are exhausted.  The State also urges that all of Holt's claims are in procedural

---

[37]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[38]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Holt's petition was filed by the clerk of court on September 14, 2012, when pauper status was granted.  Holt dated the signature on the cover letter and memorandum in support of his petition on August 16, 2012. These documents were submitted with the application. Thus, this is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The State's suggestion that the pleadings were submitted on August 14, 2012 is erroneous.

default.  Although their calculation contains some errors, the State correctly concludes and I find that Holt's petition is <u>not</u> timely filed.

## IV.   <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[39]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  In this case, Holt's conviction was final on June 24, 2010.  Thus, under a literal application of the statute, Holt had one year from the date his conviction became final, or until June 24, 2011, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

---

[39]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Holt has not asserted any reason that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled. In his reply to the State's limitations defense, Holt suggests that he should have been given additional time to pursue his writ application in the Louisiana Fifth Circuit, since he filed it with the court before the return date set by the state trial court. There is nothing unusual or rare about the fact that the Louisiana Fifth Circuit proceeded to address a writ application that was filed and pending before it, even if it was filed before the assigned deadline. Holt's argument fails even to approach the type of rare or exceptional circumstance under which equitable tolling is granted.

16

My review of the record reveals no circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent. See Holland v. Florida, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times

extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.  Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision as a tolling statute.  Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

18

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea

is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies also are not other collateral review for purposes of the tolling calculation. Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000), aff'd, 239 F.3d 365 (5th Cir. 2000); Gerrets v. Futrell, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

The one-year AEDPA statute of limitations period began to run in Holt's case on June 25, 2010, the day after his conviction was final. The limitations period ran for 264 days, until March 16, 2011, when he submitted his application for post-conviction relief to the state trial court. The limitations period remained tolled until August 25, 2011, which was thirty (30) days after the Louisiana Fifth Circuit denied Holt's related writ

application on July 26, 2011, and he did not timely submit a writ application to the Louisiana Supreme Court.  At that point, Holt had 101 days remaining to file his federal petition, which he did not do.

Instead, the one-year AEDPA statute of limitations period began to run again on August 26, 2011, and did so uninterrupted until November 4, 2011, when it expired. Holt had no properly filed state post-conviction or other collateral review proceedings pending in any state court during that time period.

I recognize that Holt submitted a writ application to the Louisiana Supreme Court on August 26, 2011.  However, that pleading was not properly filed because it was not submitted within 30 days after the Louisiana Fifth Circuit issued its ruling on July 26, 2012.  Under La. S. Ct. R. X§5, an application must be mailed or filed within 30 days after the appellate court's ruling to be properly filed, timely and reviewable.  See Butler, 533 F.3d at 317.  That rule, along with the requisite mailbox rule, required Holt to submit his state court pleading to prison officials for mailing on or before Thursday, August 25, 2012.  Holt did not sign and date his Louisiana Supreme Court writ application until the next day, Friday, August 26, 2012,[40] which is the earliest date he could have delivered it to prison officials for placement in the mail. By that time, it was already untimely. Under federal habeas corpus law, an untimely state court filing cannot be considered in

_____

[40]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 11-KH-1902, 8/31/11 (postal meter 8/29/11, dated 8/26/11) (see cover page and signature on page 10 dated August 26, 2011).

the tolling calculation. Id. at 319 (La. S. Ct. R. X§5(a) forbids any extension of time); Williams, 217 F.3d at 309-11 (same). In addition, for the reasons mentioned previously, his second rehearing request in the Louisiana Fifth Circuit submitted September 2, 2011, also was not procedurally proper and thus not properly filed. See Gaudet v. Cain, 31 Fed. App'x 835, 2002 WL 243278 at **1 (5th Cir. Jan. 18, 2002) (improper application for rehearing in state circuit court did not toll the AEDPA limitations period); see also Scott v. Cain, 2002 WL 1484385 at *2 n.17 (E.D. La. 2002) (Africk, J).

Even if Holt were to be afforded tolling credit for his untimely Louisiana Supreme Court writ application (and/or the rehearing petitions), his federal petition is still untimely. Under this alternative calculation, the Louisiana Supreme Court petition would have remained pending until it was denied on Friday, May 4, 2012. See Moreno v. Johnson, 239 F.3d 365, 2000 WL 1741552, at *1 (5th Cir. 2000) (Table, Text in Westlaw) (once a prisoner's state petition is denied, it is no longer "pending" for purposes of tolling the AEDPA limitations period) (citing Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000)). Holt is not entitled to statutory tolling beyond that date.[41] At

---

[41]To the extent Holt contends under some contrived "mailbox rule" that the remainder of the statute of limitations period would run from when he received the Louisiana Supreme Court's ruling, he is incorrect. There is no federal or state law that would exclude the weekend days occurring just after the order was issued. The law cited above is settled that the state court proceeding was no longer pending once the order was issued on May 4, 2012. Statutory tolling ended on that day. Further, Holt indicates that he received the order in a prompt manner, and he does not contend or establish that any inordinate delay occurred that would entitle him to equitable tolling. In addition, neither Holt's pro se status nor his limited understanding of the law is sufficient to support equitable tolling. Lookingbill v. Cockrell, 293 F.3d 256, 264 n.14 (5th Cir. 2002); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000).

that point, Holt would have had 101 days, or until Monday, August 13, 2012, to file his federal petition.  Holt, however, waited until August 16, 2012, to sign and submit his federal petition.[42]

Holt's federal petition would still be untimely under this more lenient alternative calculation.  Lookingbill v. Cockrell, 293 F.3d 256, 265 (5th Cir. 2002) (missing the AEDPA limitations deadline by even a few days nevertheless renders a federal petition untimely).  Holt's untimely filed federal habeas corpus petition must be dismissed for that reason.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Derrick Holt for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

---

[42]See Rec. Doc. No. 1, p. 18 (cover letter dated 8/16/12). While Holt had his form federal petition notarized on August 14, 2012, he dated his cover letter and the memorandum in support on August 16, 2012. All of these documents were submitted to and received by the court at the same time in the same envelope. Rec. Doc. No. 1, pp. 18, 107.

with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[43]

New Orleans, Louisiana, this _____22nd_____ day of February, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[43]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

24